UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CR17-163 TSZ |
| HYUN JOO HONG aka GRACE HONG, | ORDER |
| Defendant. | |

THIS MATTER comes before the Court on defendant Hyun Joo Hong aka Grace Hong's motion for compassionate release, docket no. 164. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order DENYING the motion.

**Background**

In March 2018, defendant pleaded guilty to conspiracy to commit wire fraud and four counts of wire fraud. *See* Plea Agr. (docket no. 88). In October 2018, she was sentenced to 72 months in the custody of the United States Bureau of Prisons ("BOP"). *See* Judgment (docket no. 132); Am. Judgment (docket no. 137). Defendant is currently incarcerated at the Federal Detention Center in Seattle, Washington ("FDC SeaTac"), and

ORDER - 1

has a projected release date of February 28, 2024. She seeks immediate release on the grounds that her services are needed to care for her three children (ranging in age from four to nine) and that, despite her complete recovery from a previous infection with the pathogen that causes Coronavirus Disease 2019 ("COVID-19"), she faces a risk of acute illness or death if re-exposed.

**Discussion**

**A.    Failure to Exhaust Administrative Remedies**

A sentence is generally considered final and may not be altered except in limited circumstances. *See* 18 U.S.C. § 3582(b); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010). Pursuant to the First Step Act of 2018, a defendant may directly request a reduction in the term of incarceration, but must first exhaust all administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Defendant indicates that, in July 2020, she submitted a compassionate-release request to the Warden of FDC SeaTac. *See* Ex. 8 to Def.'s Mot. (docket no. 164-8). On August 12, 2020, the Warden timely issued a written denial of defendant's request. *See* Ex. 10 to Def.'s Mot. (docket no. 164-10). The record contains no indication that defendant appealed the Warden's ruling through BOP's Administrative Remedy Procedure, and thus, the Court has no jurisdiction to hear defendant's current motion for compassionate release. *See United States v. Blinks*, No. 1:17-CR-248, 2020 WL 5366728, at *1-2 (E.D. Cal. Sep. 8, 2020).

**B.    No Substantive Basis for Compassionate Release**

Even if defendant had exhausted her administrative remedies, she would not be entitled to relief. Defendant bears the burden of establishing "extraordinary and

ORDER - 2

compelling reasons" justifying a reduction in her sentence. See United States v. Powers, No. CR15-166, 2020 WL 3605748, at *1 (W.D. Wash. July 2, 2020); see also 18 U.S.C. § 3582(c)(1)(A)(i).  In determining whether "extraordinary and compelling reasons" exist, the Court considers the "helpful guidance" offered by the application notes to United States Sentencing Guideline ("USSG") § 1B1.13.  See United States v. Lineberry, No. CR17-175, 2020 WL 6685044, at *1 (W.D. Wash. Nov. 12, 2020).  Defendant relies on two provisions of the application notes, namely (i) a subsection contemplating that certain "family circumstances" might constitute "extraordinary and compelling reasons" for release, for example, "[t]he death or incapacitation of the caregiver of the defendant's . . . minor children," see USSG § 1B1.13 cmt. n.1(C)(i); and (ii) a subsection describing certain medical conditions that might justify a sentence modification, see USSG § 1B1.13 cmt. n.1(A).  Defendant has not made the requisite showing under either subsection.

### 1. Family Circumstances

Although the situation is challenging for defendant's mother-in-law, who is 80 years old and now finds herself caring for defendant's and her husband's three kids, during a pandemic, with limited financial resources, physical stamina, English language skills, and technological savvy, see Hong Decl. at ¶¶ 2, 4-5, & 7 (docket no. 164-3), it does not meet the criteria set forth by the United States Sentencing Commission.  See United States v. McKinney, No. CR18-96, 2020 WL 6076898, at *4-5 (W.D. Wash. Oct. 15, 2020) (ruling that the possibility of future incapacitation of a caregiver, as a result of contracting COVID-19, is not a basis for compassionate release); United States v. Bolden, No. CR16-320, 2020 WL 4286820, at *4-5 (W.D. Wash. July 27, 2020)

1  (holding that a caregiver's disabilities did not rise to the level of incapacitation); *see also*
2  United States v. Tyler, No. 09-391, 2021 WL 736467, at *3-4 (E.D. La. Feb. 25, 2021)
3  (defining "incapacitation"); United States v. Mullan, No. 8:19-cr-432-T-33, 2020 WL
4  7425272, at *2 (M.D. Fla. Dec. 18, 2020) (concluding that the defendant had not
5  demonstrated a Lupus diagnosis rendered her children's caregiver "incapacitated");
6  United States v. Rodriguez, No. 2:18CR145, 2020 WL 5627451, at *2 (N.D. Ind. Sep. 21,
7  2020) (observing that a caregiver's "serious ongoing health problems" were neither
8  sudden nor new and were not incapacitating). Moreover, when the Court imposed the
9  sentence now being served, it considered the plight of defendant's offspring, who would
10 be left without either parent in the household. *See* Tr. (Oct. 11, 2018) at 158:11-25
11 (docket no. 146). Indeed, defendant was permitted to remain out of custody after
12 sentencing for twelve weeks (more than double the standard period allowed for self-
13 surrender) so that she could make arrangements for childcare, and at defendant's request,
14 the Court made a recommendation to the BOP that she be placed as close to Seattle as
15 possible to facilitate visitation. *See id.* at 159:10-16 & 160:2-19; *see also* Am. Judgment
16 (docket no. 137). Having already accommodated defendant in these ways, the Court
17 would not, even if it had jurisdiction, now permit defendant to use her children as a
18 means of escaping punishment for her offenses.

19  **2.   Medical Conditions**

20    The Commission's application notes outline two circumstances in which an
21 inmate's medical condition might constitute an "extraordinary and compelling" reason
22 for compassionate release: (i) an inmate is suffering from a terminal illness; or (ii) an
23

ORDER - 4

inmate is suffering, and not expected to recover, from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health as a result of the aging process, which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(i)&(ii).  Defendant does not meet either of these criteria.  Instead, defendant seeks release based on a fear of developing serious complications or dying from COVID-19, despite her lack of any risk factors, see Def.'s Mot. at 23 (docket no. 164), and despite her having previously tested positive for COVID-19 without developing any of the more severe symptoms of the disease.  See Ex. B to Def.'s Mot. (docket no. 166 at 20) (indicating that defendant reported nasal congestion and post-nasal drip, but no coughing, shortness of breath, fatigue, body aches, sore throat, headache, or loss of taste or smell).  Defendant has provided no evidence that COVID-19 has had any lasting adverse effect on her health, and her anxieties about re-infection and possibly a more grave reaction upon re-exposure to the coronavirus are entirely speculative, unsubstantiated by medical evidence, and based on generalized concerns that do not qualify as "extraordinary and compelling reasons" for reducing her sentence.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see also United States v. Williams, No. 3:19-239-1, 2020 WL 3037075, at *3-4 (W.D. La. June 5, 2020).

   **3. Conditions at FDC SeaTac**

  Defendant's contentions that the conditions at FDC SeaTac and BOP's practices render her unable to engage in the self-care necessary to avoid re-infection with the pathogen that causes COVID-19 entirely miss the mark.  By focusing on external factors

ORDER - 5

inherent in confinement or the facility or arising from BOP's procedures, defendant merely recites factors affecting the risk of contagion for everyone at the correctional institution, and she offers no means of identifying specific individuals deserving of compassionate release. See Powers, 2020 WL 3605748, at *2.

### C. Danger to the Community

In deciding whether to grant compassionate release, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). Having done so, the Court concludes that, even if defendant could demonstrate the required exhaustion of administrative remedies and any "extraordinary and compelling" reason to support her motion, her immediate release would not be consistent with § 3553(a), given the nature, circumstances, and seriousness of her crimes, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public from future offenses defendant is likely to commit. See 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A)-(C).

During a roughly seven-year period, defendant and her husband defrauded more than 50 individuals of over $12.7 million in the aggregate. See Superseding Indictment at ¶ 13 (docket no. 74); Am. Judgment at App. A (docket no. 137 at 8). She preyed on the religious beliefs of these victims, including her own parents, persuading some of them to cash out their retirement accounts, take out personal loans, or sell residences, and she destroyed the entire life savings of most of the people she duped. She did so to fund for herself (and her husband) opulent homes, fancy vehicles, an eponymous yacht ("FOR GRACE"), luxurious trips, and lavish shopping sprees.

Prior to and during sentencing, defendant exhibited little to no genuine remorse, attempting to blame her behavior on her husband, see Tr. (Oct. 11, 2018) at 153:13-23 (docket no. 146) ("I trusted him with everything") — a tactic that appears to continue to this day, albeit in a different form.  See Ex. 7 to Def.'s Mot. (docket no. 164-7) (raising for the first time accusations of domestic violence).  The Court has no faith in the various observations, or in defendant's own assertions, of contrition and reform, or in defense counsel's suggestion that "it is unfathomable that Grace could ever pose a danger to the community."  Reply at 23 (docket no. 174).  The Court instead concludes that, whether in the United States, the Republic of Korea, or elsewhere, defendant would pose a serious danger to the community if she is released prematurely from prison.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)   Defendant Hyun Joo Hong aka Grace Hong's motion for compassionate release, docket no. 164, is DENIED; and

(2)   The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 2nd day of April, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 7